UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION
DIVISION

ARIANE BRYAN,
         Plaintiff,

v.                                     Case No.:

COASTAL HOTEL PROPERTIES,LLC,
A Florida Limited Liability Company,
Dba Blind Pass Resort/St. Pete Beach;
And Unknown Defendant #1; and
Unknown Defendant #2,
         Defendant(s),
_____/

## COMPLAINT FOR DECLARATORY
## AND INJUNCTIVE RELIEF


COMES NOW Plaintiff ARIANE BRYAN ("Plaintiff"), by and through undersigned

counsel hereby files this Complaint and sues Defendant COASTAL HOTEL PROPERTIES,

LLC, a Florida limited liability company, DBA Blind Pass Resort/St. Pete Beach, ("Defendant"),

Unknown Defendant #1, and Unknown Defendant #2 ("Defendants") for injunctive relief,

attorney's fees and costs (including but not limited to court costs and expert fees) pursuant to

Title III of the Americans with Disabilities Act of 1990, as amended, 42 U.S.C. §§ 12181-12189

("ADA"), 28 C.F.R. Part 36 (hereinafter "ADAAG"), and  declaratory relief  pursuant to Florida

Statute Chapter 86, and alleges as follows:

## BACKGROUND

1.  Plaintiff brings this action to stop the marginalization of vision impaired and

mobility impaired patrons, and otherwise end such ongoing civil rights violations that Defendant

has committed  against  persons  with  disabilities  throughout  the  United  States  and  globe,  by

1

seeking temporary and permanent injunctive relief to correct Defendant's policies and practices to include measures necessary to ensure compliance with State and Federal laws and provide accessible auxiliary aids and services for effective communication with Defendant's business, which includes its Website (defined below), such that Plaintiff and others similarly situated can readily and effectively access, equally, and fully enjoy all of the rights and privileges vital to public life, and otherwise communicate with Defendant without unnecessary and unlawful barriers, impediments, hindrances, difficulties, blockages, prohibitions, deterrents, hurdles, discrimination, obstacles, disadvantages, encumbrances, and delays.

2.  In a world of increasing number of low vision, blind, and mobility impaired individuals, it is essential that these individuals not be excluded.

3.  Defendant's Property and Website are places of public accommodation as defined by the ADA  because it is, or is part of, a place of exhibition, entertainment, sales, rental, or lodging establishment. The subject website allows the general public access to view, reserve and book online reservations for lodging.  As such, the subject website is a sales establishment, which is a place of public accommodation pursuant to 42 U.S.C. §12181 and must comply with the ADA. This means it must not discriminate against individuals with disabilities and may not deny full and equal enjoyment of the services afforded to the general public and the Defendant has subjected itself and the website it has created and maintains, to the Americans with Disabilities Act ("ADA").

4.  Congress provided a clear national mandate for the elimination of discrimination against individuals with disabilities when it enacted the ADA.  Such discrimination includes barriers to full integration, independent living, and equal opportunity for persons with

disabilities, and for which those barriers created by inaccessible online content and services in places of public accommodation, such as Defendant, its Property and website, and applications.

5.   In addition to Title III's prohibition of denial-of-participation, no public accommodations may "afford an individual or class of individuals, on the basis of disability … directly, or through contractual licensing, or other arrangements with the opportunity to participate in or benefit from a good, service, facility, privilege, advantage, or accommodation that is not equal to that afforded to other individuals."  42 U.S.C. § 12182(b)(1)(A)(ii).

6. The broad mandate of the ADA is  to provide an equal opportunity for individuals with disabilities to participate in and benefit from all aspects of American civic and economic life. That mandate extends to internet websites, such as the Defendant's website.

7. The Department of Justice has long taken the position that both State and local government websites and the websites of private entities that are public accommodations are covered by the ADA. In other words, the websites of entities covered by both Title II and Title III of the statute are required by law to ensure that their sites are fully accessible to individuals with disabilities.

8. Web Content Accessibility Guidelines ("WCAG") 2.0 is the industry standard adopted by major companies and governmental agencies to ensure their websites are accessible to disabled persons.

9. The WCAG guidelines are readily achievable.

10.  Because the internet has become a significant source of valuable information, the international Websites Standards Organization and World Wide Web consortium published well-established guidelines, namely the WCAG, for web content accessibility to people with disabilities and are universally followed by most business entities and governmental

agencies.  These guidelines are readily available via the internet so that a business designing a website can easily access the standards and provide several basic components to incorporate into the website so that persons with disability may have accessibility.

11. The World Wide Web/Internet has become an invaluable information super highway, a portal and tool for conducting transactions and allows people to travel and experience an array of things, which may be cultural, commercial, personal, or transcendent, and each virtual ramp off that super highway guides people and lets individuals acquire and compare information from cooperating or competing interests so that one may learn about varying interests, including travel, planning a vacation, purchasing sundries, booking a reservation at an Airbnb, travel inn, vacation rental, motel, hotel, resort or other public lodging facility in order to enjoy places of public accommodations.

## JURISDICTION/VENUE/PARTIES/DEMANDS

12. This is an action for injunctive relief pursuant to Title III of the Americans with Disabilities Act, 42 U.S.C. §§12181-12189 ("ADA"), 28 U.S.C. §1331, and 28 C.F.R. §36.201 to prevent discrimination which includes equal access to Defendant's internet website for services to reserve and book online lodging accommodations at Defendant's place of public accommodation and for declaratory relief pursuant to Florida Statute Chapter 86.

13. U.S. District Court for the Middle District of Florida has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1343 for claims arising under the ADA and

ADAAG and concurrent jurisdiction over the state claim because the causes of action arise from the same core operative facts.

14. Venue is proper in the Middle District of Florida pursuant to 28 U.S.C. § 1391 because it is where the Defendant does business; where the cause of action accrued; and it is the situs of the property that is the subject of this action. Assignment to the Tampa Division is appropriate pursuant to Rule 1.02 of the Local Rules of the United States District Court, Middle District of Florida,  because it is the county having the greatest nexus with the action, with due regard to the where the cause of action accrued and the situs of the subject property.

15. Plaintiff, ARIANE BRYAN, resides in Marietta, Georgia, is *sui juris* and qualifies as an individual with disabilities as defined by the ADA. Plaintiff is unable to engage in the major life activity of walking more than a few steps without assistive devices. Instead, Plaintiff is bound to ambulate in a wheelchair or with a cane or other support and has limited use of her hands. She is unable to tightly grasp or pinch, or twist her wrist to operate turning door hardware or spigots. When ambulating beyond the comfort of her own home, Plaintiff must primarily rely on a wheelchair. Plaintiff requires accessible handicap parking spaces located closest to the entrances of a facility. The handicap and access aisles must be of sufficient width so that she can embark and disembark from a ramp into her vehicle. Routes connecting the handicap spaces and all features, goods and services of a facility must be level, properly sloped, sufficiently wide and without cracks, holes or other hazards that can pose a danger of tipping, catching wheels or falling. These areas must be free of obstructions or unsecured carpeting that make passage either more difficult or impossible. Amenities must be sufficiently lowered so that Plaintiff can reach them. She has difficulty operating door knobs, sink faucets, or other operating mechanisms that require tight grasping, twisting of the wrist or pinching. She is hesitant to use sinks that have

unwrapped pipes, as such pose a danger of scraping or burning her legs. Sinks must be at the proper height so that she can put her legs underneath to wash her hands. She requires grab bars both behind and beside a commode so that she can safely transfer and she has difficulty reaching the flush control if it is on the wrong side. She has difficulty getting through doorways if they lack the proper clearance. Plaintiff has low vision as a result of diabetic retinopathy and is legally vision impaired.

16. Defendant(s) COASTAL HOTEL PROPERTIES, LLC, conducts and transacts business under the laws of the state of Florida, and otherwise operates within the jurisdiction of this Court.

17. Defendant(s) is the owner, lessee, lessor or operator of commercial property and improvements, commonly known as Blind Pass Resort St. Pete Beach (hereinafter "Property") located at 7901 Blind Pass Road, St. Pete Beach, FL 33706.

18. Defendant(s) is the owner, operator, sponsor, publisher,  promoter or otherwise has an interest in, or is the beneficiary of, the website http://www.blindpassresort.com (herein "Website"), which is an electronic storefront that provides access to worldwide consumers an array of goods and services, including but not limited to the ability to view images of the Property, accommodations and amenities, learn about the surrounding community, book a reservation, and other exclusive features.

19. Plaintiff has retained undersigned counsel and law firm to commence and prosecute this action to stop marginalization of disabled or qualified disabled persons committed by Defendants which have violated those certain civil and unalienable rights protected by the Constitution of the United State of America, the Constitution of the State of Florida, together

with further congressional enactments, including the ADA and ADAAG.  Pursuant to statute, Plaintiff is entitled to immediate temporary and permanent injunctive relief to prevent the present, continued, and future discrimination and discriminatory practices so evidenced by Defendants, its Property and Website as described herein.

## COUNT I --INJUNCTIVE RELIEF for
## Civil Rights Violation of Title III of the Americans with Disabilities Act

20. Plaintiff realleges and incorporates paragraphs 1 through 19 as if fully set forth herein.

21. Florida, and Tampa Bay Area in particular, attracts people for a number of reasons, including but not limited to its weather, theme parks, wildlife, beaches, restaurants, retailers, museums, concert halls, theater, sporting events, and otherwise invites people to tour within the area.

22. Pursuant to 42 U.S.C sec. 12181(7)(A), the Defendant's Website is a place of public accommodation under the ADA because it serves to augment its Property by providing the general public information on the location of the Defendant's Property, educate the general public as to the amenities offered by Defendant's Property as well as the amenities of the surrounding area, and also to provide the general public with the ability to view, book, and make reservations online.

23. The Website promotes the Defendant's Property, therefore, the Website has a true nexus to the Defendant(s)'s physical commercial property.

24. Defendant(s)' Property and Website are places of public accommodation within the definitions of the ADA and ADAAG and are not exempt.

25. Plaintiff is a consumer who frequently uses the internet who is interested in booking and reserving a room at Defendant's place of lodging, as offered through Defendant's Website.

26. During April, 2019, the Plaintiff, who is a frequent visitor to Florida and the Pinellas and Hillsborough counties area, attempted on several occasions to utilize the Defendant's website to learn about Blind Pass Resorts brand items and services.

27. The Website, which is an integral part of Defendant's business, is used to (a) promote the Property's unique features; (b) attract people from all over the world to enjoy its Property, accommodations and amenities, including but not limited to beach access, dining experience(s) at the Property and surrounding areas, exploring nearby attractions and shopping; (c) view features of particular room accommodations; and (d) make reservations online. As such, the Website itself is a place of public accommodation subject to all of the requirements of the ADA and ADAAG.

28. Through the use of the Website, the Defendant offers information to the public about the Property and surrounding areas of interest, and otherwise targets or solicits business from persons located throughout the world for pecuniary gain. Although the Website provides to the public at large a wide array of goods, services, facilities, privileges, advantages, and accommodations offered by said Defendant, the Website contains barriers that make it difficult, if not impossible, for persons with disabilities to view all of the ADA accessible options and complete a transaction on its Website for ADA accommodation.

29. Unlike mobility or visually disabled individuals, a business, such as Defendant(s), can decide to create or benefit from a physical and virtual environment free of barriers, which is inclusive for all members of the public, including the Plaintiff, or instead create zones of discrimination that excludes persons with disabilities, such as Plaintiff, by failing to take readily

achievable measures to provide accessibility, auxiliary aids and services to its Property and Website.

30. The ADA  requires companies providing services to the general public to make their services equally, fully and independently accessible to people with disabilities, such as the Plaintiff.  A direct nexus exists between the Defendant, its Property and Website because Defendant owns, operates, leases, leases to, operates, has a pecuniary interest in or is the beneficiary of, via contractual, licensing, or other arrangements, its Property and Website, and otherwise directly or indirectly diverts or hijacks internet traffic to its Property and Website for purposes of attracting, enticing, and soliciting consumers from a global marketplace, including individuals with disabilities such as Plaintiff.

31.  Plaintiff could not navigate the Defendant's Website, and as a result, Plaintiff was unable to participate in the online consumer experience at the Defendant's Website as experienced by the general public, 27 years after the Title III of the ADA was enacted and which promised to remove such barriers.

32. Defendant has operated its business in a manner that completely excludes individuals with disabilities who are visually impaired from enjoying and visiting its place of public accommodation, namely the Defendant'(s) Website.

33.  Defendant has not provided full and equal enjoyment of the services, facilities, privileges, advantages and accommodation provided by and through its Website.  Under the ADA, all places of public accommodation must ensure that the disabled individuals enjoy full and equal enjoyment of its goods and services by making reasonable modification to its services and sales policies and procedures.

34.     Readily achievable remedies exist without presenting undue hardship upon the Defendant and with reasonably immediate implementation would provide equal offering to all, promote common purpose, and offer mutually beneficial opportunities.

35.  Websites and applications can easily and readily be imbedded with images and coded to be useable by people with limited mobility and sight, such as Plaintiff.

36.  Despite readily available technology that would render Defendant's Website accessible to persons with disabilities, Defendant chooses to exclude these users and other potential users similarly situated on the basis of disability.

37.  Such barriers result in discriminatory and unequal treatment of individuals with disabilities who are visually impaired, which caused Plaintiff to suffer actual harm and discrimination.

38.     Plaintiff continues to desire to patronize the Defendant's Website, but is unable to do so as Plaintiff is unable to comprehend the Defendant's Website, thus will continue to suffer irreparable injury from the Defendant's intentional acts, policies, and practices set forth herein unless enjoined by this Honorable Court.

39.  The Defendant's Website did not offer an adequate system to permit a disabled person such as Plaintiff with visual impairment to comprehend its website in an effective manner; specifically, but not limited to, the Website contains at least 34 failed instances where Website does not meet WCAG or Accessible Rich Internet Application (ARIA) standards that have been promulgated to make web access and web content more accessible to people with disabilities. Upon initial review of Defendant's Website, all remedies are readily achievable. However, additional errors may be discovered through discovery.  Specifically, but not limited to, Website contains the following failures:

a. 19 color-contrast elements lack sufficient color contrast to enable vision impaired users to adequately comprehend the Website in accordance with WCAG 1.4.3 and WCAG 2AA;

b. 8 failures where images do not have alternate text in accordance with WCAG 3.1.1;

c. Website does not contain the handicap icons;

d. Buttons do not have discernable text WCAG 2.4.4 and WCAG 4.1.2;

e.  2 instances where <iframe> and <frame> elements contain non-empty title attributes contrary to WCAG 2.4.1;

f. 8 instances where attribute value in labels in not unique;

g. 3 instances where <html> element lacks valid value;

h. 1 instance where links have no discernable text contrary to WCAG 2.4.4 and 4,1,2;

i.2 instances where <meta name="viewport"? disables text scaling and zooming;

j. no list of accessibility features;

k.  No ability to book a room with accessible features.


40.  Defendant(s) excludes mobility and visually impaired people from its Property and Website in violation of the ADA and ADAAG because it offers numerous goods, services, facilities, privileges, advantages, accommodations, amenities, and activities to most customers at the click of a mouse.  However, Defendant's Website fails to provide one or more visual depictions of its ADA features such that Plaintiff is unable to determine whether the Property has adequate ADA accommodations at Defendant's Property.  Defendant's Website and applications are incorrectly coded for use by Plaintiff.

41.  When websites and applications are incorrectly coded, like Defendant'(s), visually impaired users, such as Plaintiff, are excluded from the content and services available.

42.   Defendant(s) excludes people with disabilities, such as the Plaintiff, from the full and equal participation in the growing internet economy that is increasingly a fundamental part of the common marketplace and daily living.  In the wave of technological advances, which is constantly evolving, technology is becoming an increasingly prominent part of everyday life, allowing persons otherwise excluded to be included, and to fully, independently enjoy and pursue life, liberty and happiness through equal access to goods, services, facilities, privileges, advantages, and accommodations.  The lack of equal participation, for which Defendant is charged herein, violates and disrupts fundamental concepts of Constitutional guarantees afforded to all persons seeking full, equal and independent access to reasonable accommodations without unlawful impediment, hindrance, barrier and segregation.

43.   Plaintiff encountered barriers with Defendant's(s) Website in violation of the ADA and ADAAG, which precluded Plaintiff from patronizing Defendant's establishment and has otherwise deterred Plaintiff from being able to use and enjoy Defendant's public accommodations.  The inaccessibility of Defendant's(s) Website has caused undue burden, hardship, and delay in Plaintiff's travel plans; alterations to Defendant's Website are readily achievable. At the time of the commencement of this action, the Defendant's(s) Website lacked complete information about accessibility of the Property, which resulted in Plaintiff being unable to make a decision whether the accommodations were suitable for Plaintiff; specifically, but not limited to the following lack of information:

a. no depiction of handicapped parking;

b. no depiction of accessible rooms;

c. no information regarding door knobs;

d. no depiction of accessible seating in dining area;

e. no depiction of accessible check in counter;

f. no depiction of accessible entrance to Property;

g.  no option to reserve an accessible room in the same manner as one would reserve a king or queen bed, smoking or non-smoking, or room with a view.

h.  Website does not include the universal symbol for the disabled (wheelchair or computer icon denoting HTML for those visually impaired), which would permit disabled individuals to access the website's accessibility information and accessibility facts;

i. No depiction of pool lift;

j. No written list of accessibility features of the Property.

44. On information and belief, the Defendant(s) has neither created nor instituted on its Website a page for individuals with disabilities, nor displayed a link and information hotline, nor created an information portal explaining when and how the Defendants will have its Website, Applications, and Digital Assets accessible to the visually impaired community.

45. Plaintiff and others will continue to suffer irreparable injury from Defendant'(s) intentional acts, policies, and practices set forth herein unless enjoined by the court.

46. Plaintiff will revisit the subject Website within ninety (90) days after service of the original Complaint to ensure ADA compliance. Plaintiff is a frequent visitor to Pinellas County and the surrounding Florida counties. Specifically, Plaintiff will travel to Pinellas and

Hillsborough counties, Florida, in August, 2019 for an appearance at mediation, to visit friends, meet with her attorneys, and to research accommodations for her future trips to this area.

47.  Because of Defendant's(s) denial of full and equal access to, enjoyment of, and communication with, its goods, services, facilities, privileges, advantages, and accommodations, Plaintiff and others similarly situated has suffered, and continues to suffer, an injury in fact, which is concrete and particularized, present, actual and a direct result of Defendant's(s) conduct or omission.

48.  Pursuant to Title III, "[n]o individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operated a place of public accommodation." 42 U.S.C. § 12182(a).

49. Public accommodations are prohibited from subjecting "an individual or class of individuals on the basis of a disability … directly, or through contractual, licensing, or other arrangements, to a denial of the opportunity of the individual or class to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodations of an entity."  42 U.S.C. § 12182(b)(1)(A)(i).

50. Separate is not equal and discrimination includes "a failure to take such steps as may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services[.]" 42 U.S.C. § 12182(b)(2)(A)(iii).  Defendant's(s) disparate treatment of persons who are not disabled or qualified disabled from persons who are disabled or qualified disabled violate State and Federal law, and such discrimination must cease.

51.Defendant(s),including its Property and Website, failed to comply with ADA or ADAAG criteria in violation of general prohibition against discrimination for individuals with disabilities and the specific requirement(s) concerning public accommodations.

52.   As a result of the inaccessibility of the Defendant'(s) Website and the barriers to access its Website (when removal of those barriers is readily achievable), the Defendant(s) has denied individuals with disabilities who are visually impaired full and equal enjoyment of the information and services that the Defendant(s) has made available to the general public on its Website in derogation of 42 U.S.C. sec. 12101 *et seq*., and as prohibited by 42 U.S.C. sec. 12182 *et. seq*.

53. The Defendant(s) has violated the ADA (and continues to do so) by denying access to its Website  to individuals with disabilities who are visually impaired. These violations within the Website are ongoing.

54. Plaintiff has no plain, adequate, or complete remedy at law to redress the wrongs alleged herein and this suit for and injunctive relief is the only means to secure adequate redress from the Defendant's unlawful and discriminatory practices.

55.   Defendant(s) uses standards, criteria or methods of administration that have a chilling effect, discriminatory effect, or perpetration of discrimination on the Plaintiff and a protected class of citizens.

56. Unless the Court enjoins Defendant(s) from its engagement and continued engagement in these discriminatory practices, Plaintiff and those similarly situated suffer will continue to suffer irreparable harm.

57.  As a result of the Defendant'(s) inadequate development and administration of the Website, Plaintiff is entitled to injunctive relief pursuant to 42 U.S.C. sec. 12133 to remedy the discrimination.

58. Pre-suit notice to the Defendants of  violations of ADA is not required pursuant to the ADA.  Any and all conditions precedent to the action have been fulfilled, performed, or waived; specifically, on or before April 8, 2019, the undersigned performed a diligent search of online public records, and according to those records, the Defendant(s) has not registered for remediation nor has been sued for violations described herein.

59.  Pursuant to 42 U.S.C. sec. 12188, this Court is vested with the authority to grant Plaintiff injunctive relief; including an Order to:

a) Require Defendant(s) to adopt and implement a web accessibility policy to make publically available and directly link from the homepage of Website to a statement as to Defendant'(s)policy to ensure persons with disabilities have full and equal enjoyment of the services, facilities, privileges, advantages, and accommodations through its website, and

b) Require Defendant(s) to cease and desist discriminatory practices and if necessary to cease and desist operations of the Website  until the requisite modifications are made such that its Website becomes equally accessible to persons with disabilities.

WHEREFORE Plaintiff  demands judgment against Defendant(s) and requests the following injunctive  relief:

a)  The Court enter an Order granting temporary, preliminary and permanent injunction prohibiting Defendant(s) from operating its Website without adequate accommodation for the visually impaired;

b)  The Court enter an Order requiring Defendant(s) to update its website to remove barriers in order that the individuals with visual disabilities can access the website to the full extent required by the Title III if the ADA;

c)  The Court enter an Order requiring Defendant to clearly display the universal disabled logo within its website, wherein the logo would lead to a page which would state Defendant's accessibility information, facts, policies, and accommodations. Such a clear display of the disabled logo is to ensure that individuals who are disabled are aware of the availability of the accessible features of Website;

d)  The Court enter an Order requiring Defendant to provide ongoing support for web accessibility by implementing a website accessibility coordinator, a website application accessibility policy, and providing for website accessibility feedback to ensure compliance thereto;

e)  The Court enter an Order directing Defendant to evaluate its policies, practices, and procedures toward persons with disabilities, for such reasonable time so as to allow the defendant to undertake and complete corrective procedures to the Website;

f)  The Court enter an Order directing  Defendant(s) to establish a policy of web accessibility and accessibility features for the Website;

g)  The Court award reasonable attorney's fees, compensatory damages, all costs, (including but not limited to court costs and expert fees), and other expenses of suit, to the Plaintiff; and

h)  That the Court award such other and further relief as it deems necessary, just and

proper.

## COUNT II--DECLARATORY RELIEF Pursuant to Florida Statute 86

60. Plaintiff realleges and reincorporates by reference the allegations contained in paragraphs 1 through 19 as if fully set forth herein, and makes the following additional allegations in the alternative.

61. An actual controversy has arisen and now exists between the parties in that Plaintiff contends and believes Defendant(s) has violated the ADA and ADAAG and said Defendant(s) denies the same.

62.  A judicial declaration is necessary and appropriate at this time in order that each of the parties may know their respective rights and duties and act accordingly.

63. A bona fide, actual, present practical need for a declaration exists.

64. The declaration requested concerns a present, ascertained or ascertainable state of facts or present controversy as to a state of facts.

65.A privilege or right of the Plaintiff is dependent upon the facts or the law applicable to the facts.

66.The Plaintiff and Defendant(s) have an actual, present, adverse and antagonistic interest in the subject matter, either in law or in fact.

67. The relief sought by the Plaintiff is not merely giving of legal advice or to answer questions propounded for curiosity.

WHEREFORE, Plaintiff respectfully prays that this Honorable Court declare judgment setting forth the rights and duties of the parties herein; determine that Defendant'(s) Website and

Property was in violation of the ADA or ADAAG at the time this action was commenced; issue an injunction requiring said Defendant(s) to comply with the ADA and ADAAG with regard to its Website and Property, and otherwise prohibit said Defendant(s) from continuing its discriminatory practices; award reasonable attorney's fees, costs, and litigation expenses; and grant such other and further relief it deems appropriate in the premises.

Respectfully submitted,

MCDONALD & MINCE, PLLC

_/s/ Melissa Gilkey Mince_____
Melissa G. Mince, Esq. / FBN: 546230
Email: mmince@mcdonaldandmincelaw.com
Tel: 727- 687-9707
Layla K. McDonald, Esq. / FBN: 11308
Email: lmcdonald@mcdonaldandmincelaw.com
Tel: 727-667-2269
801 West Bay Drive, Suite 113
Largo, Florida 33770
Secondary Email: eserve@mcdonaldandmincelaw.com